**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA**          :

    **v.**          :   **CRIMINAL NO.  18 - 172**

**JOSEPH WILLARD**          :


**MEMORANDUM**

**SCHMEHL, J.**   *s/JLS*                                        **APRIL 18, 2022**

Defendant was arrested on February 22, 2018, by the Bethlehem Police

Department and the Pennsylvania State Police on an outstanding arrest warrant from

the State of Missouri for failing to register as a sex offender. Following a search of his

van and the devices therein pursuant to a search warrant, Defendant, on February 26,

2018, was charged in Lehigh County with several child pornography offenses. The case

was subsequently adopted by federal authorities and on April 26, 2018, Defendant was

indicted on one count of production of child pornography, in violation of 18 U.S.C. §

2251(a) and (e) and six counts of possession of child pornography, in violation of 18

U.S.C. § 2252(a)(4)(B). In a superseding indictment dated August 22, 2019, Defendant

was charged with one count of production of child pornography, in violation of 18 U.S.C.

§ 2251(a), (e), and three counts of possession of child pornography, in violation of 18

U.S.C. § 2252(a)(4)(B). In a second superseding indictment dated August 4, 2020,

Defendant was charged with seven counts of production and attempted production of

child pornography, in violation of 18 U.S.C. § 2251(a), (e), two counts of production of

child pornography, in violation of 18 U.S.C. § 2252(a), and one count of possession of

1

child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). Defendant has filed a motion to suppress evidence he claims was unlawfully seized from his van (electronic and digital devices) as well as evidence that was seized as a result of the van search, including Defendant's cellphone, wristwatch, bracelet and photographs of his person.[1] Because the government and the Defendant agreed that there are no factual disputes that would necessitate an evidentiary hearing, the Court held oral argument on the motion.  For the reasons that follow, the motion is denied.

The facts giving rise to the search of Defendant's computers and digital devices are not in dispute and are taken verbatim from Defendant's motion to suppress:

.
Between October 31, 2017 and November 25, 2017, Bethlehem Police Detective Michael DiLuzio embarked on an investigation on the BitTorrent network to identify persons using peer-to-peer ("P2P") file sharing software to distribute child pornography online. Detective DiLuzio identified download requests and downloads involving alleged child pornography from a particular Internet Protocol ("IP") address, identified the Internet Service Provider ("ISP"), and obtained an "Order of Court" from a Lehigh County Common Pleas judge ordering PennTeleData, Inc. to turn over the subscriber information for the relevant IP address for the time between October 31 through November 25, 2017. The Order of Court was approved on January 10, 2018 and was served on PennTeleData, Inc. that same day.

The next day, PennTeleData, Inc. responded by identifying the name of the subscriber and an address of 1050 Route 100, Trexlertown, PA 18087. Approximately five weeks later, on February 20, 2018, Detective DiLuzio obtained a search warrant for that address to search and seize the contents of any electronic devices located in the premises. Two days later, the warrant was executed. Two laptop computers and several cell phones were located and searched. The police found no evidence of child pornography or PSP file sharing applications on any of the devices.

---

[1] This motion was actually filed by Defendant's prior counsel, then adopted by his current counsel.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The warrant to search Mr. Willard's van and the devices therein was approved by a magistrate on February 26, 2018.

Detective DiLuzio interviewed the homeowners and confirmed that the wireless Wi-Fi internet was secured and required a passcode to connect. The female homeowner told Detective DiLuzio she has a sister who lives in Missouri, who has a friend named Joseph Moyer who travels around the country in a van as part of his employment. When Moyer traveled to the Lehigh Valley, he would visit their home for dinner and use their internet service for business purposes on his laptop. The couple told Detective DiLuzio that Moyer was likely the only other person besides the home's residents who have accessed their Wi-Fi internet. They confirmed Moyer had just visited right after Thanksgiving, which Detective DiLuzio noted in the search warrant coincided with the November 25, 2017 downloads. The wife indicated Moyer drives a large white conversion van, and sleeps in the van when he visits the area, leaving it parked in their driveway.

Later that day, she contacted Detective DiLuzio to add that Moyer was adopted as a child and likely had another legal name, similar to Willard. She stated Willard might be on a "registry," without specifying which kind. Detectives conducted records check research and located Joseph Michael Willard, who is a registered sex offender from Missouri. Detective DiLuzio confirmed with the female homeowner that Mr. Willard was the person she knew as Joseph Moyer. Detective DiLuzio also confirmed that Mr. Willard was wanted with full extradition out of Missouri for failing to register as a sex offender. The warrant was issued on March 10, 2015. The prior convictions requiring his registration were for aggravated criminal sexual abuse of a child (victim 13-16 years old) in Illinois in 1995, and possession of child pornography in Arkansas in 2002.

Based on this information and internet research, Detective DiLuzio determined that Mr. Willard was likely traveling the country purporting to be running a modeling agency called Moyer Model Management or "M3." During a past arrest in 2002, Mr. Willard was charged with failing to register as a sex offender after he was allegedly caught attempting to kiss an underage girl while hired to do a photo

shoot. Detective DiLuzio noted the genre of images downloaded from the P2P appeared to be "photo shoot series types of images." The girl in the images was standing in front of a backdrop with faux stones and logs in a woodland type scene, "typical of a staged photo shoot."

At approximately 5 p.m. that same date, Detective DiLuzio found Mr. Willard at the Aldi Supermarket on Hamilton Boulevard in Lower Macungie Township. He and Pennsylvania State Police troopers from Fogelsville responded to a large white Chevrolet Express 3500 conversion van with Missouri registration parked in the lot. Detective DiLuzio entered the store and found Mr. Willard, who provided a false name when he was confronted. Mr. Willard was then arrested on the outstanding Missouri warrant. Mr. Willard admitted the van in the Aldi parking lot belonged to him and that he had a key for the van on a keyring in his pocket. Mr. Willard had a cell phone in his pocket, which was secured as evidence. He stated that he believed he had a USB drive in his pocket, but later told the detective it was inside the van. Law enforcement observed a hard case that would commonly be used for camera equipment between the car seats.

Detective DiLuzio had the van towed from the parking lot and secured in the City of Bethlehem evidence impound lot building. He then applied for a warrant to search the van and the electronic devices he believed would be found inside the van. Essentially identical information was then funneled into an affidavit in support of a warrant to search Mr. Willard's cell phone. This warrant was also approved by the magistrate on February 26, 2018.

Memorandum of Law in Support of Defendant's Motion to Suppress (ECF 45 at pp 1-5.)

According to the government, law enforcement seized from the van a white Asus laptop, a 64GB Kingston USB drive, and a PNY SD card. A forensic review of the electronic evidence seized revealed the Asus laptop contained 62 videos allegedly depicting the sexual abuse of children, as well as approximately 7,000 images that

depicted many series of images that ranged from child erotica to child sex abuse images. The Kingston USB drive contained 135 videos allegedly depicting child sexual abuse, and 224 zip files, each containing many sub-folders, which contained additional child sexual abuse images and videos. There were also 14,973 images that allegedly depicted many series of images ranging from child erotica to child sexual abuse images. The investigation also revealed Defendant produced hundreds of images and videos of minors engaged in sexually explicit conduct, including a girl who was 8 years old, whom he sexually molested and recorded his abuse. In some of the images, a side of Defendant's face containing freckles is visible as are his hands containing unusual discoloration. Defendant is also seen in some of the images wearing a wristwatch and a bracelet. After viewing these images, Detective DiLuzio realized that at the time he was arrested, Defendant was wearing what appeared to be the same wristwatch and bracelet he observed in the images and that his hands appeared to be discolored and his face contained freckles. As a result, Detective DiLuzio drafted separate affidavits of probable cause to search Defendant's cellphone (ECF 45-3), his wristwatch and bracelet (ECF 45-4) and to search and take photographs of Defendant's hands and face (ECF 45-5). All three affidavits of probable cause were approved by a magistrate.

Defendant argues that the search of his van was conducted without a sufficient probable cause showing being made to the magistrate. Specifically, Defendant argues that Detective DiLuzio failed to append to the probable-cause affidavit a copy of the images he viewed. Defendant further argues that the affidavits averred to by Detective DiLuzio in support of the warrants failed to adequately describe the images on the videos so that the magistrate could exercise his detached and neutral judgment as to

whether any of these images met the definition of child pornography under Pennsylvania law. As a result, Defendant moves to suppress what he claims to be all derivative fruits of the unlawful search of the van.

In deciding whether to issue a search warrant, the task of a magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). *See also United States v. Shields,* 458 F.3d 269, 277 (3d Cir. 2006). A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Gates,* 462 U.S. at 236, (quoting *Spinelli v. United States,* 393 U.S. 410, 419). This Court's duty on review "is simply to ensure that the magistrate had a 'substantial basis for ... [concluding]' that probable cause existed." *Gates* at 238–39.  The "substantial basis" inquiry requires this Court to evaluate only the facts before the issuing magistrate, i.e., within the four corners of the affidavit, and not other evidence in the record. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

With respect to "a warrant application to search for child pornography, a magistrate must be able to independently evaluate whether the contents of the alleged images meet the legal definition of child pornography." *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012). The evaluation by a magistrate is necessary since "identifying images as child pornography will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer" which must be made by the magistrate, not the affiant. *Id*. That evaluation can occur "in one of three ways: (1) the magistrate can personally view the images; (2) the search-warrant affidavit can provide a sufficiently

detailed description of the images; or (3) the search-warrant application can provide some other facts that tie the images' contents to child pornography." *Id.* (internal quotation marks and citation omitted).

In *Pavulak*, our Court of Appeals held that the affiant's label of images in a probable- cause affidavit as "child pornography," without more, did not "present any facts from which the magistrate could discern a 'fair probability' that what is depicted in the images meets the statutory definition of child pornography and complies with constitutional limits." *Pavulak,* 700 F. 3d at 661. (citation omitted.) The Court noted that the affidavit did not describe whether the minors depicted in the images were clothed or nude and whether they were engaged in any "prohibited sexual act" as defined by Delaware law. *Id*. The Court referred to language it previously used in *United States v. Miknevich*, 638 F.3d 178 (3d Cir. 2011) that "that kind of 'insufficiently detailed or conclusory description' of the images is not enough." *Id*. (quoting *Miknevich,* 683 F. 3d at 183).

In *Miknevich*, the affiant averred that "[t]he movie is described as children, under the age of eighteen years old engaged in sexual acts and/or poses." The Court of Appeals criticized this language because it "provided no factual details regarding the substance of the images in question." *Miknevich*, 638 F. 3d at 183. Nevertheless, the Court of Appeals found that the affidavit was saved since it also "identified the contents of the computer file as child pornography through a sexually explicit and highly descriptive file name referring to the ages of the children and implying that they were masturbating." *Pavulak*, 700 F. 3d 662 citing *Miknevich*, 638 F.3d at 184. According to the Court of Appeals, the file name was "explicit and detailed enough so as to permit a reasonable inference of what the file

is likely to depict." *Id*.

Here, although Detective DiLuzio did not append to the probable-cause affidavit a copy of the images he viewed, the Court finds that the probable-cause affidavit in support of the warrant for the search of Defendant's van complied with *Pavulak* by provided the magistrate with a "sufficiently detailed" description of the images for the magistrate to independently evaluate whether they constituted child pornography as defined by Pennsylvania law.

Pennsylvania law defines the crime of child pornography as "[a]ny person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.Cons.Stat. § 6312(d). That statute defines a "prohibited sexual act" as "[s]exual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual gratification of any person who might view such depiction." 18 Pa.Cons.Stat. § 6312(g).

In his probable-cause affidavit, Detective DiLuzio averred that one video file he downloaded on October 31, 2017 was named "lolita pthc underage angel pedo(full movie 14 minutes).avi." The torrent also defined a text file named "special pedo collectiontop.txt." According to Detective DiLuzio, the video file depicted a "12-14 year old child in various stages of undress, exposing her breast and genitals. The video begins with her posing on a bed and later she is showering and pouring a white liquid over her body. Based on my training and experience, this file is in violation of PA T18

8

6312 Sexual Abuse of Children – Child Pornography." Doc. 45-2, p. 10.

On November 25, 2017, Detective DiLuzio downloaded an additional seven files from the same IP address. According to Detective DiLuzio, these files "consist of a series of images depicting a child, estimated to be between 10-12 years of age in various stages of undress, exposing her breasts, vagina, and buttocks. It consists of a series of images in which she eats grapes in the various stages of undress. Based on my training and experience, these files are in violation of PA T18 6312 Sexual Abuse of Children – Child Pornography." *Id*.

On November 25, 2017, Detective DiLuzio also downloaded eight images which described as "consist[ing] of a series of images depicting a child, estimated to be between 10-12 years of age in various stages of undress, exposing her breasts, vagina, and buttocks. It consists of a series of images in which she eats grapes in various stages of undress. Based on my training and experience, these files are in violation of PA T18 6312 Sexual Abuse of Children – Child Pornography." *Id*. at p. 11.

Detective DiLuzio also averred that Defendant "was currently wanted, full extradition, out of Missouri for failing to register as a sex offender. The warrant was issued March 10, 2015. His offenses that required him to register include an Aggravated Criminal Sexual Abuse of a Child (Victim 13-16) in Illinois in 1995 and a Possession of Child Pornography in Arkansas in 2002." *Id*. at p. 12.

Also in the probable cause affidavit was an averment from Detective DiLuzio that he "determined [Defendant] has likely been traveling around the country purporting to be running a modeling agency called Moyer Model Management or M3. During a past arrest in 2002, he was charged with failing to register as a sex offender after he

attempted to kiss an underage girl while hired to do a photo shoot." *Id*.

Although Detective DiLuzio did not describe any acts of sexual intercourse, masturbation, sadism, masochism, bestiality, fellatio, or cunnilingus, the child pornography statute also lists as "prohibited sexual activity" "lewd exhibition of the genitals or **nudity if such nudity is depicted for the purpose of sexual gratification of any person who might view such description**." (emphasis added.) Even assuming, *arguendo*, that the images described by Detective DiLuzio do not qualify as lewd exhibition of the genitals, they could clearly qualify as nudity depicted for the purpose of sexual gratification of any person who might view the images.

The Detective describes a video depicting a child between the ages of 12 and 14 posing in an unnatural manner on a bed in various stages of undress, exposing her breasts and genitals.  A bed can certainly be associated with sexual activity. Detective DiLuzio further describes the same girl as showering while pouring a white liquid over her body. This image can also be reasonably considered by a neutral magistrate as a  sexually suggestive act by the child. The other images describe a child, estimated to be between 10 and 12 years of age in various stages of undress, exposing her breasts, vagina and buttocks and eating grapes. The two girls in the images are exposing their breasts and genitals and the second girl is also exposing her buttocks. Therefore, both children are clearly depicted as nude. Moreover, it would be entirely reasonable for the magistrate to conclude from the provocative nature of the description of the nude children that their nudity could appeal to the sexual gratification of a person who might view the images. Thus, unlike the affiant in *Pavulak*, Detective DiLuzio did not simply label the images and video as "child pornography" but presented the magistrate with factual details regarding

10

the substance of the images in question.

In addition, the probable-cause affidavit also contains a highly suggestive file name ("lolita pthc underage angel pedo (full movie 14 minutes).avi" which, when combined with Detective DiLuzio's description of the files, could further lead the magistrate to believe that the file depicted child pornography. *Pavulak*, 700 F.3d at 661. Finally, Detective DiLuzio's averments that Defendant had a prior conviction for possession of child pornography, and Defendant maintained a ruse of owning a modeling agency, provide additional information (along with Detective DiLuzio's description of the images and the highly suggestive file name) that would corroborate that the images constituted prohibited sexual activity under Pennsylvania law. *Id*.

Since the Court finds that the search warrant for Defendant's van and the devices therein was supported by probable cause, the evidence obtained as a result of the search of the van was not the fruit of a poisonous tree and was properly used to support an affidavit of probable cause for the search of Defendant's cellphone, wristwatch, bracelet as well as photographs of his hands.

Defendant next claims that the search warrant for Defendant's van and the devices therein was overbroad and did not seek to minimize an intrusion into Defendant's personal effects. Specifically, Defendant argues the probable-cause affidavit alleges that the search should have been limited to only the two peer to peer downloads, especially since the Detective already knew the hash values of the Bit Torrent files.[2] Yet, as Defendant points out, Detective DiLuzio requested, and the magistrate permitted, Detective DiLuzio to conduct a search "all digital devices," "all software," "a;; daya/files of interest," "all data

---

[2] Defendant cites no authority for proceeding in such a manner.

stored on any SIM or SD card, " and access to "all cloud storage and/or social media data accounts." ECF 45 at 21. Defendant further notes that the warrant further allowed searches of all e-mail communications, all internet websites, private email information, and cloud storage as well as searches for "all documents of any nature related to and/or associated with the violation and/or criminal activity associated with this particular application for a search warrant." *Id*.[3]

In his probable-cause affidavit, Detective DiLuzio requested a warrant to search Defendant's van for, *inter alia*, all computer hardware, software, and digital media devices, data/files and cloud storage. The affidavit also sought "documents of any nature related to and/or associated with the violation and/or criminal activity associated with this particular application for a search warrant," i.e., violations of 18 Pa. Cons. Stat. § 6312. Detective DiLuzio further averred that "[t]hese items are seized as is outlined in the affidavit of this search warrant and incorporated hereto by reference."

Detective DiLuzio specifically advised the magistrate of the need to seize computer and digital information to effectuate the search as follows:

> Searching computerized/digital information for evidence or instrumentality's [sic] of crime commonly requires officers to seize most or all of a computers system's or a digital device – including; Input / output peripheral devices, related software,

---

[3] Indeed, the Fourth Amendment prohibits "[g]eneral warrants" that would allow "exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 479, (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). To guard against such general warrants, courts require "particularity," which "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). The term particularity has three components: "First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (citations omitted). The intention of the particularity requirement is that "nothing is left to the discretion of the officer executing the warrant." *Marron,* 275 U.S. at 196. As discussed below, these three components have been met here.

documentation, and data security devices (including passwords) so that a qualified expert can accurately retrieve the system/device data in a laboratory or other controlled environment.

Doc. 45, Ex. B, p. 6.

Searching a computer system and/or a digital device for criminal evidence (data) is a highly technical process requiring specialized equipment (hardware/software), skills and a properly controlled environment. The vast array of computer/digital hardware and software seized at a crime scene or collected from a subject even requires digital forensic analysts to specialize in some specific forensic tools to extract data from the device, so it is difficult to know before a search which expert is qualified to analyze the device and its data. In any event, data search methodologies and protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even 'hidden', erased, compressed, password-protected, or encrypted files. Since digital evidence (data) is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from destructive code imbedded in the system/device, as a 'booby trap'), a controlled environment is essential to complete and accurate analysis.

Doc. 45, Ex. B, p. 7.

People engaged in the distribution of pornographic/child pornographic materials often maintain collections of such material and that such material is used as resource for furtherance of the exploitation of children and/or juveniles. These people keep the collections for long periods of time, years at times…Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs (image/video files). Magazines, motion pictures, videotapes, books, drawings, computer generated depictions or other visual media. . . .

Doc. 45, Ex. B, p. 9.

Thus, Detective DiLuzio specifically explained to the magistrate why it was necessary to search and seize all of Defendant's computers and digital devices to

obtain not only the two series of images described in the warrant but also to potentially discover other images of child pornography. He averred that "[p]eople engaged in the distribution of pornographic/child pornographic materials often maintain collections of such material and that such material is used as resource for furtherance of the exploitation of children and/or juveniles." In other words, where smoke of child pornography is found, there is usually fire of child pornography in the same place. Based on that inference, the magistrate could conclude that there was a "fair probability" that a full search of Defendant's computer and digital devices would uncover additional evidence of child pornography. *Gates*, 462 U.S. at 238.

Our Court of Appeals has observed that because of individuals' ability to "hide, mislabel, or manipulate files," *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011), "there may be no practical substitute for actually looking in many (perhaps all)" files and locations during a search of digital storage. *Id*. at 239. The Court further noted that the manner of searching digital storage is circumscribed by objective reasonableness rather than specific search protocols. *Stabile*, 633 F.3d at 239. Simply put, the warrant's authorization to search and seize virtually all computer-related and digital items in the Defendant's van does not invalidate the warrant.

Finally, any possible overreach of the warrant was mitigated when Detective DiLuzio averred in three separate places in his probable-cause affidavit that the items that were the subject of the search "are seized as is outlined in the affidavit of this search warrant and incorporated hereto by reference," as pertaining solely to the charge of child pornography under 18 Cons. Stat. § 6312. ECF 45-2, p.2. *See United States v. Johnson,* 690 F.2d 60, 64 (3d Cir.1982) ("When a warrant is accompanied by an

affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant."). Therefore, Detective DiLuzio did not have unbridled discretion to search for and seize anything he wished which he believed might have evidence of crimes other than child pornography.

The government argues that even if the Fourth Amendment was violated, any ill-gotten evidence taken from Defendant's van should not be suppressed based on the "good-faith" exception to the exclusionary rule.

Under *United States v. Leon,* 468 U.S. 897, 922 (1984), the exclusionary rule is a "deterrent sanction" created by the Supreme Court to "bar[] the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States,* 564 U.S. 229, 231-32 (2011). The Supreme Court has cautioned that "exclusion `[should be] our last resort, not our first impulse[.]'" *Herring v. United States,* 555 U.S. 135, 140 (2009) (citation omitted.). The exclusionary rule deters "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* When the police act with an "objectively reasonable good-faith belief" in the legality of their conduct, or when their conduct "involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (citations and internal quotation marks omitted). Accordingly, discerning "whether the good faith exception applies requires courts to answer the 'objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of

all of the circumstances.'" *United States v. Katzin*, 769 F.3d 163, 171 (3d Cir. 2014) (en banc) (quoting *Herring*, 555 U.S. at 145); see also *Leon*, 468 U.S. at 922 n.23.

Typically, issuance of the search warrant itself presents the existence of good faith for the police officer executing the search. *Id*. *at 922.* Yet there are situations in which, although a neutral magistrate has found probable cause to search, a lay officer executing the warrant could not reasonably believe that the magistrate was correct. *Hodge*, 246 F.3d at 308. Those four rare circumstances occur when: (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *Id*. at 307-308 (internal quotation marks and citations omitted). Here, Defendant claims that the good faith exception is not available because Detective DiLuzio's probable-cause affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." The threshold for establishing this particular rare circumstance is a high one. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).

Defendant argues that, because *Pavulak's* requirements were clear when Detective DiLuzio drafted his probable-cause affidavit for the search of Defendant's van, his failure to append the images to his affidavit or provide a more detailed description of the images constituted disregard for, or ignorance of, clearly established Third Circuit law.

There is no evidence that Detective DiLuzio intended to mislead the magistrate or acted in a deliberate, reckless or grossly negligent manner. In fact, the record reveals that

Detective DiLuzio acted in a careful, conscientious manner in drafting the affidavit and he complied with *Pavlulak* by providing detailed descriptions of the images, rather than merely stating that, in his opinion, the images constituted child pornography. The images described by Detective DiLuzio coupled with a highly suggestive file name ("lolita pthc underage angel pedo (full movie 14 minutes).avi" as well as Detective DiLuzio's averments referencing Defendant's prior conviction for possession of child pornography, provide additional information that would corroborate that the images constituted prohibited sexual activity under Pennsylvania law and that it was reasonable for the executing officer to trust the warrant's legality. *Id*.

In reaching this result, the Court notes that the Supreme Court has stated that the "costs" associated with suppression are "substantial," *Leon*, 468 U.S. at 907, given that suppression "often excludes 'reliable, trustworthy evidence of a defendant's guilt, 'suppress[es] the truth and set[s] [a] criminal loose in the community without punishment.'" *Katzin*, 769 F. 3d at 186 (quoting *Davis*, 564 U.S. at 237). There is no question that the government has substantial evidence against the Defendant and that without this evidence, the most serious, if not all, the charges would have to be dismissed.

In short, the Court finds that Detective DiLuzio's actions in relying on the magistrate's search warrant to search the Defendant's van were not "sufficiently deliberate that exclusion can meaningfully deter [them], and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Defendant has failed to satisfy the "high threshold" of showing that the warrant for the search of his van "was based on an affidavit so lacking in probable cause as to render

official belief in its existence entirely unreasonable." *Hodge*, 246 F 3d at 307-308. Detective DiLuzio and any other officers who may have assisted in the search of the van reasonable relied on this warrant in good faith.

Since the Court has ruled that the search warrant for Defendant's van was supported by probable cause and, even if it was not, the warrant would be saved by the good faith exception, the Court finds that the remaining warrants authorizing the search and seizure of Defendant's cellphone, wristwatch, bracelet and photographs of Defendant's hands and face which relied in large part on the items seized as a result of the initial search of Defendant's van contained sufficient probable cause. Therefore, the Defendant's motion to suppress is denied in its entirety.