**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 18-172** |
| **JOSEPH WILLARD** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/JLS** **OCTOBER 25, 2023**

Defendant was arrested on February 22, 2018, by the Bethlehem Police Department and the Pennsylvania State Police on an outstanding arrest warrant from the State of Missouri for failing to register as a sex offender. Following a search of his van and the devices therein pursuant to a search warrant, Defendant, on February 26, 2018, was charged in Lehigh County with several child pornography offenses. The case was subsequently adopted by federal authorities and on April 26, 2018, Defendant was indicted on one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) and six counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

In a superseding indictment dated August 22, 2019, Defendant was charged with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), (e), and three counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

In a second superseding indictment dated August 4, 2020, Defendant was charged with seven counts of production and attempted production of child

pornography, in violation of 18 U.S.C. § 2251(a), (e), two counts of production of child pornography, in violation of 18 U.S.C. § 2252(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2).

On July 7, 2022, a third superseding indictment was filed charging Defendant with eight counts of production and attempted production of child pornography, two counts of production of child pornography and one count of possession of child pornography.

On August 18, 2022, a fourth superseding indictment was filed, charging Defendant with 11 counts of production and attempted production of child pornography and one count of possession of child pornography.

By order dated August 15, 2022, the Court set jury selection for November 28, 2022. [ECF 147.] A jury was chosen on November 28, 2022, and trial commenced on November 29, 2022 with Defendant proceeding *pro se* and CJA counsel acting as stand-by counsel. On December 5, 2022, the Defendant was found guilty by a jury of 11 counts of production or attempted production of child pornography and one count of possession of child pornography.

On July 28, 2023, the Defendant filed a counseled amended motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. On August 29, 2023, the Court denied the amended motion for a new trial and sentenced the Defendant to a term of life imprisonment. This Memorandum explains the Court's reasoning for denying the motion for a new trial.

**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. Within its discretion, the court may grant a new trial only if it believes that "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002). Additionally, the court must grant a new trial if errors occurred during the original trial, and it is reasonably possible that such errors substantially influenced the jury's decision. *See United States v. Mastro,* 570 F.Supp. 1388, 1390 (E.D.Pa.1983); *United States. v. Newmark,* 2008 WL 927961, *32 (E.D.Pa. April 04, 2008) (Pratter, J.). In addition, our Court of Appeals has explained that "motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Martinez,* 69 Fed. Appx. 513, 516 (3d Cir.2003).

**DISCUSSION**

Defendant first argues that he is entitled to a new trial, claiming that "the government and its agents denied him access to discovery and trial materials from the day after he was granted his right to represent himself until after the jury had reached its verdict." [ECF 202 at p. 10.] Specifically, Defendant argues that his "substantive due process rights were violated when the government intentionally denied him access to his legal materials, then confiscated these materials." *Id*. at p. 13. As a result, he claims he was unable to prepare for trial and a miscarriage of justice occurred.

In support of his claim, Defendant alleges the following:

> A few days after the Court granted Mr. Willard the right to represent himself, the government scheduled a review of discovery with Mr. Willard at a government facility. Mr. Willard found that the Court had granted his request to represent himself at that meeting. After this short review took place, Det. Delusion [sic] took possession of Mr Willard's laptop in order to download to the laptop the data extraction from a seized Samsung device. Det. Delusio was planning to take the laptop to the prison for Mr. Willard as soon as the download was complete, presumably, the next day. The government also provided Mr. Willard with two large accordian [sic] folders of discovery. However, the next day, Mr. Willard was transported by the U.S. Marshalls to the FDC Philadelphia and was not allowed to bring any materials with him. That Monday, after jury selection, Mr. Willard was driven directly back to Lehigh County Prison. However, upon arrival, prison officials placed him on "Suicide Watch." The prison also confiscated all of his belongings, including his legal materials. This included the accordian [sic] folders provided by the government, the laptop and any other materials in his possession. Mr. Willard remained on "Suicide Watch" until right after the jury returned its verdict. While Mr. Willard was provided these materials ever [sic] day for trial, he hardly had time to review the documents, let alone prepare for opening and closing statements, develop a theme or prepare witness examinations. This was apparent during trial as Mr. Willard was constantly looking for documents and seemingly unprepared for witness examinations. His access to his legal materials was limited to the time during trial and the during the lunch break. Mr. Willard was unable to present any meaningful defense due to this intentional government conduct. As such, a miscarriage of justice occurred because Mr. Willard's right to proceed pro se and prepare for trial was denied due to government action. As such, this Court should grant him a new trial.

ECF 202 at 10-11.

After conducting a thorough inquiry in open court pursuant to the United States Supreme Court's decision in *Faretta v. California*, 402 U.S. 806 (1975) and the United States Court of Appeals for the Third Circuit's decision in *United States v. Peppers*, 302 F. 3d 120 (3d Cir. 2002), the Court on November 17, 2022, permitted Defendant to

represent himself in this matter. On November 17, 2022, the Defendant filed a *pro se* motion to compel the government to "grant the Defendant ample opportunity to inspect, view and examine at a government facility all property and materials allegedly discovered by the government as a result of the seizure of items from Defendant's electronic devices and digital storage devices." [ECF 160.] By Order dated November 22, 2022, the Court granted the Defendant's motion to compel and ordered that "[p]ursuant to 18 U.S.C. § 3509 (m)(2)(A) and(B), the government shall immediately provide the Defendant with ample opportunity to inspect, view and examine at a government facility any property and material that constitutes child pornography as defined in 18 U.S.C. § 2256." [ECF 162.]

The viewing of images by the Defendant in this case was always going to be precarious given the fact that Defendant was at all times in custody and facing a possible term of life imprisonment. Although Defendant was indeed shuttled between the Federal Detention Center in Philadelphia to the Lehigh County Prison during the week before trial, he was not allowed to have access to his laptop and accordion folders because prison officials at the Lehigh County Prison considered Defendant a suicide risk. This was a judgment call by prison officials who apparently were concerned that a conviction would result in Defendant spending the remainder of his life in prison. It is not the province of the Court to second guess this decision. There is simply no evidence of any intent on the part of the government or its agents to **intentionally** confiscate or deny Defendant access to his legal materials for an inappropriate reason. [1]

[1] Defendant's reliance on *Morello v. James*, 810 F. 3d 344 (2d Cir. 1987) is misplaced. *Morello* was a civil case brought under 42 U.S.C. section 1983 in which a prisoner alleged that during his transfer to another prison, certain correctional officers "arbitrarily stole various items of his personal property," including appellate briefs, notes, research materials and rough draft worksheets. The Second Circuit held that the

The Court also notes that Defendant did have full access to all his legal materials in court and during court breaks. During trial, the Court bent over backward to ensure that Defendant had ample time to cross-examine the government's witnesses and even requested the government to assist him in locating and displaying a particular exhibit.

Significantly, Defendant does not argue that the week before trial was the initial and only opportunity for him to have reviewed the images and pictures. Indeed, the government had already provided both Defendant and his counsel with required discovery during all the **years** and **months** that passed before he was allowed to proceed *pro se* on November 17, 2022. [Summary of Discovery provided by the Government at ECF 205-1.]

For instance, on June 16, 2022, the Court granted the Defendant's motion to order Lehigh County Prison to allow Defendant access to discovery via a laptop and directed Lehigh County Prison to provide defendant "with access to laptop to be provided by defense counsel, through the United States Attorney's office so that Defendant can review discovery through said laptop." [ECF 135.] On August 20, 2022, the government provided the Defendant with a laptop containing 19 pieces of the government's evidence, including six pages of copies of photographs. [ECF 205-1.] The government also provided Defendant, through his counsel, with substantial additional discovery. [ECF 205-1.] In short, Defendant had ample time to examine the images to determine whether he had a supportable defense.

---

Plaintiff had a right to move forward with his case since allegations of **intentional** interference with the right of a prisoner to have access to the courts **could** constitute a violation of the plaintiff's substantive constitutional rights. *Id*. at 348.

Most significantly, Defendant does not assert a single instance where having more time to have privately reviewed a certain image that he was not able to view would have substantially influenced the jury's decision.

Indeed, the evidence overwhelmingly revealed that Defendant traversed the country in a white van while posing as a modeling agent in order to groom young girls and take sexually explicit images of them. One of the images was even a recording of the Defendant raping a nine-year old girl. In addition, several of the victims and mothers of the victims positively identified the Defendant in open court during trial. And the Court notes that Defendant has chosen not to challenge the sufficiency of the evidence on any of the 12 counts by filing a motion for judgment of acquittal under Fed.R.Crim. P. 29. Throughout the entire length of the proceedings in this case, Defendant presented himself as a master manipulator and malingerer. There simply is no possibility that an innocent person was convicted in this case.

Under these circumstances, the Court finds there is no merit to Defendant's claim that he was denied his substantive due process rights by the government.

Defendant next contends he was denied ample opportunity to privately and timely review all of the images in this case under 18 U.S.C. § 3509(m).

The relevant portions of 18 U.S.C. § 3509(m) read as follows:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined

> by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m).

Defendant contends that his review of discovery "took place in a room while the Detective/affiant sat right next to him and controlled the flow of the review of discovery. The Detective exercised complete dominion over the discovery materials, and did not allow Mr. Willard to examine the evidence at his own discretion nor pace. He watched as Mr. Willard took notes and the whole review was recorded on video (and perhaps audio)." [ECF 202 at pp. 14-15.] Defendant also contends that the government only showed him the images it intended to use at trial instead of all of the images in its possession.

The Court reiterates that the viewing of images by the Defendant and his counsel in the manner outlined in § 3509(m) was always going to be precarious given the fact that Defendant was at all times in custody and facing a possible term of life imprisonment. However, the Court again points out that Defendant does not argue that this was the initial and only opportunity for him to have reviewed the images and pictures. He also does not point to a single instance where his further review of a specific image would have substantially influenced the jury's verdict. Indeed, the government provided Defendant access to discovery through his court-appointed

counsel discovery during the **years** and **months** before he was allowed to proceed *pro se* on November 17, 2022. Defendant (and his stand-by counsel) also had full access to all his legal materials in court and during court breaks.

In insisting he did not have ample time to review all the images, Defendant directs the Court's attention to a decision from the Eastern District of California in *United States v. Flinn*, 521 F.Supp.2d 1097 (E.D. Cal. 2007). In *Flinn*, the defendant's expert wanted to forensically examine a mirror image of the defendant's hard drive and thumb at the expert's facilities rather than at the government's facilities. In this context, the Court stated:

> An ample opportunity to forensically examine seized computer items means an examination whereby the government can supply reasonably up-to-date tools (hardware and software) and facilities such that a defendant can construct a reasonable, available forensic defense, if one is available at all, and whereby the analysis will not be impeached because it was not supported by the proper hardware or software. An ample opportunity will permit a defense expert to utilize his or her hardware or software. An ample opportunity also requires that the analysis be performed in a situation where attorney-client privilege and work product will not be easily, accidentally exposed to the government, and in a facility which is open to the defense at its request during normal working hours, and to the extent feasible, during non-working hours.

*U.S. v. Flinn*, 521 F. Supp. 2d at 1101.

Here, there was no request made by a defense expert to examine any of Defendant's computer items at any facility. The only request was for Defendant himself to view the images in private at a government facility. Therefore, the definition of ample opportunity in *Flinn* is irrelevant.

Likewise, another case cited by Defendant, *United States v. O'Rourke,* 470 F. Supp. 2d 1049 (D. Ariz. 2007), also involved a request made by a defense expert to examine a hard drive and therefore is not applicable. The Court notes that the Court in *O'Rourke* did define "ample opportunity for inspection, viewing, and examination at a government facility" to mean "more than adequate opportunity." *Id*. at 1056, citing WEBSTER'S NEW COLLEGIATE DICTIONARY 39 (1981).

The Court was simply not going to allow, as Defendant apparently requests, the Defendant to have had unfettered time and access, even in a government facility, to privately view the very materials containing child pornography that he was charged with producing and possessing.

Defendant next claims the Court abused its discretion when it denied his request for a continuance that was made on the morning of jury selection. Defendant contends in his amended motion for a new trial that the continuance was needed so that he could secure the testimony of Jeffrey E. Summerton, Ph.D ("Dr. Summerton"), who previously opined that Defendant suffered from Dissociative Identity Disorder ("DID"), thereby, in Defendant's view, supporting a defense of insanity.

On November 28, 2022, prior to the commencement of the selection of a jury, the Defendant orally requested a continuance. [ECF 164.] The Court denied the request. *Id.* The Defendant's written motion for a continuance was docketed on December 2, 2022. [ECF 169.] In his written motion for a continuance, Defendant did not mention the need to secure the testimony of Dr. Summerton, but claimed he needed the continuance solely so that he could draft and submit pre-trial motions. [ECF 164.]

In a non-precedential decision, *United States v. Pelker*, 821 Fed. App'x. 93 (3rd Cir. 2020), our Court of Appeals recently rejected a similar request for a continuance made by a *pro se* Defendant before the start of jury selection.

> We generally assess the District Court's use of discretion on a denial of a motion for continuance by balancing the degree to which the appellant's rights were impaired against the efficient administration of justice and the rights of other defendants who are impacted by the decision. The record demonstrates that Pelker had access to discovery more than one year before trial and he received assistance from his stand-by counsel, particularly in the days leading up to trial. He has failed to show with any specificity how his rights were harmed by having to proceed with the trial as scheduled. Moreover, as the District Court noted, Pelker had opportunities to make the request well before the start of jury selection. Granting a last-minute continuance would have delayed trial, burdening jurors, witnesses and co-defendants. We conclude that the District Court did not abuse its discretion here.

*Pelker*, 821 Fed App'x at 95.

Likewise, Defendant had access to discovery through his counsel for over four years before trial and he also received assistance from his stand-by counsel in the days leading up to trial. Defendant also had opportunities to make the continuance request in advance of the jury selection. And, of course, granting a last-minute continuance would have delayed the trial yet again, as well as burdened and affected the appearance of witnesses, some of whom were from great distances away.

The Court notes that the Defendant or his counsel filed or orally made nine motions requesting a continuance of the trial in this matter. [ECF 10, 13, 18, 28, 51, 97, 117, 145, 169.] The Defendant further delayed this matter by whimsically vacillating between wanting to being represented by counsel and wanting to proceed *pro se*. For example, on

February 13, 2019, Defendant filed a *pro se* motion to change his counsel. [ECF 16.] On February 25, 2019, the Court held a hearing on the motion, during which Defendant agreed to withdraw the motion. [ECF 18.] On October 5, 2020, Defendant filed a *pro se* motion for appointment of new counsel. [ECF 67.] The Court held a hearing by videoconference on January 21, 2021 during which Defendant addressed the Court regarding his pending motions. [ECF 73.]

By Order entered on February 9, 2021, the Court granted the Defendant's motion for new counsel and appointed new CJA counsel. [ECF 75.] On December 27, 2021, Defendant filed a *pro se* motion to remove substitute counsel. [ECF 108.] On January 10, 2022, during oral argument on two pretrial motions filed by defense counsel, Defendant once again withdrew his motion to substitute counsel. [ECF 115.] On April 1, 2022, Defendant filed yet another motion to dismiss substitute counsel and proceed *pro se* [ECF 126] which the Court denied on June 16, 2022. [ECF 134.]

In denying Defendant's ninth request for a continuance on the morning of jury selection, the Court was very concerned about the pace of the case. Defendant was originally indicted in 2018 and had remained in custody ever since. While the Covid-19 pandemic certainly played a role in the delay of this case, the majority of the delay was due to the many motions for a continuance of the trial and to file pre-trial motions made by Defendant and his counsel, not to mention the inability of Defendant to decide whether he wanted to proceed *pro se* or be represented by counsel.

With respect to a continuance based on the need to file pre-trial motions, the Court notes that Defendant's original court-appointed counsel filed several well-drafted pre-trial motions, including to suppress [ECF 45], to sever offenses [ECF 42] and to dismiss

certain counts of the original indictment. [ECF 43.] His second court-appointed counsel also filed pre-trial motions, including a motion to dismiss based on a violation of the Speedy Trial Act [ECF 103] and a second motion to dismiss under the Speedy Trial Act based on the "Ruse exception." [ECF 102.] The Court carefully considered each of these motions and denied them. The Court notes that Defendant or his counsel filed five motions for an extension of time to file any pre-trial motions [ECF 77, 83, 90, 93, 95, 111], all of which the Court granted. Defendant was represented by exceptionally able counsel who filed the pretrial motions on Defendant's behalf that they believed to be proper. And, indeed, Defendant does not specifically identify any of the pretrial motions he claims he needed to file before trial.

With respect to Dr. Summerton, by Order entered on August 29, 2019, the Court vacated its previous Order of August 23, 2019 [Doc. 50] and in its stead granted the Defendant's unopposed motion for a competency evaluation pursuant to 18 U.S.C. § 4241. [ECF 55.] The Order further stated that "[t]he Court finds that there is reasonable cause to believe that the defendant may not be able to comprehend the nature of the charges against him and therefore is unable to properly assist counsel in his defense. It is therefore ORDERED that the United States Pretrial Services Office shall make arrangements for Defendant to be evaluated for competency pursuant to section 4241. Upon completion of a written report, the United States Pretrial Services Office shall provide copies of the written report to the Court, to counsel for Defendant and to the government." [*Id*.]

Defendant was examined by Dr. Summerton on September 6, 2019. In a competency report dated September 11, 2019, Dr. Summerton stated that "[b]ased

upon Mr. Willard's presentation and account of his life, the undersigned would provisionally concur with Dr. Flanagan's [Defendant claimed to Dr. Summerton that his previous therapist had diagnosed him with DID] diagnosis. There is an outside chance that Mr. Willard might have been malingering, but given the detail and nuances of this condition as he reported them, he would have to have a highly sophisticated knowledge and understanding of this disorder in order to feign it so convincingly." Report of Jeffrey E. Summerton, Ph.D, September 11, 2019 at p.10. As a result, Dr. Summerton concluded that Defendant was incompetent to stand trial.[2]

Most significantly, Dr. Summerton never expressed an opinion that Defendant was legally insane at the time of the specific charged acts, or that Defendant was not aware of the nature or wrongfulness of his conduct because of multiple personalities.[3] On the contrary, the evidence at trial revealed that Defendant meticulously plotted the grooming of his victims. There was no evidence adduced that Defendant ever "blacked out" during any of his encounters with the victims.[4]

---

[2] Dr. Summerton also opined that "[i]n addition, because by his own admission that he has significant gaps in his conscious memory due to his black-out periods and has experienced what might be considered to be frequent fugue states, he would also be very unlikely to be able to give an account of his alleged offense conduct or an alternative, alibi account even if he were more favorably disposed toward consulting with his attorneys. Therefore, he would not be able to mount a full, effective defense against his instant charges."

[3] Under the Insanity Defense Reform Act of 1984, the defense of insanity is limited as follows:

> (a) Affirmative Defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
> (b) Burden of Proof.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C. § 17. See also *United States v. Pohlot*, 827 F. 2d 889, 896 (3d Cir. 1987).

[4] Claiming that Dr. Summerton's report was flawed, the government, on October 4, 2019, filed a

Finally, Defendant and his counsel had three years to notify the government that Defendant wanted to call Dr. Summerton as an expert witness at a trial. Obviously, defense counsel saw no merit in doing so.

---

motion for a psychiatric exam and mental competency determination under 18 U.S.C. § 4241(a). [ECF 58.] By Order entered on October 8, 2019, the Court granted the motion. [ECF 59.] In a report dated March 26, 2020, Shawn E. Channell, Ph.D, performed a competency evaluation on Defendant and found the Defendant to be competent to stand trial. Dr. Channell found, in part, that Defendant had been malingering as part of the competency process. He diagnosed Defendant with antisocial personality disorder, with the need to address pedophilic disorder. Specifically, Dr. Channell found that "Mr. Willard's claims are not consistent with the way DID manifests." Report of Shawn E. Channell, Ph.D, March 3, 2020 at p. 10. Dr. Channell further wrote that "[a]ssuming he did meet criteria for DID, Mr. Willard made no statements to Dr. Summerton (at least that he recorded) or to myself about the alleged offense having occurred during a 'blackout.' Rather, he told Dr. Summerton he did not do it ('I would never have done this') and told me that he was set up by his sister-in-law and a detective she was working with." *Id*. at pp. 14-15. Indeed, at trial, no witness testified that Defendant ever blacked out while photographing or abusing his victims.